Please all rise. Hear ye, hear ye. This Honorable Appellate Court for the 2nd Judicial District is now open. The Honorable Mary S. Shostock is up. You can be seated, folks. Thank you. Your Honor, the first case on Document 2-24-0596, Villager Kirkland, Plaintiff Appellant, Kirkland Properties Holdings Company, LLC I, Kirkland Properties Holdings Company, LLC II, and James Gentile, Defendant, Appellee, and Third-Party Apprentice. Arguing on behalf of the Appellant, Ms. Jennifer Gibson. Arguing on behalf of the Appellee, Ms. Collin Bell, you may proceed. Ms. Gibson, are you ready to proceed? Yes. May it please the Court, I'm here today to ask the Court to reverse the sanctions imposed on myself and my partner, Michael Smoron, which were imposed for my participation in drafting a reply to a motion to substitute the trial court judge. As background, quick background, I'm a man from the Supreme Court. The defendants in this case filed a third-party complaint against 54 individual landowners in the subdivision subject to the annexation agreement at issue. Forty-three of those defendants were represented by Attorney Tom Byrne. From the beginning, our clients, my clients, Mr. Byrne's clients, entered into a joint defense agreement, joint representation agreement, because we intended to share case strategy and resources to defeat the defendants. Attorney Byrne's first order of business was to move to substitute the judge as of right. As the record reveals, I helped write the reply brief in support of the motion to substitute. It was for this conduct, my assistance in drafting the reply, that the sanctions were imposed. The sanctions were unjust, and they were upsetting. As lawyers, we have a job to do, and I try to do that job well, and I try to do the right thing. I've never been sanctioned before, but what was probably more exciting is that my partner, Michael Smoron, got sanctioned for something that I did. The court imposed the sanctions pursuant to its inherent power to control its docket. This was abuse of the court's power. In imposing the sanctions, the trial court relied on the dicta in the Palos case, in which the Supreme Court noted that the test the waters doctrine, that it was overruling, was not the only tool a trial court judge had to protect the integrity of the court. The Palos court specifically mentioned the concern of litigants strategically timing the motions to substitute to cause delays. This is in line with other published cases, as cited in my brief, where a trial court has used its inherent authority to sanction a party for delays caused by failure to abide by discovery, to cooperate by answering questions in a deposition. The purpose of the inherent authority is for a trial court to manage their cases in an orderly and expeditious way. It's to prevent delay, prevent gamesmanship. I've also seen cases where trial court's inherent authority has been recognized where they used it to sanction somebody who, like, repeatedly amended a complaint in a way that, you know, wasn't to preserve an issue. It was just simply to flout an order. And some other context, but I didn't see anything coming close to this subject. Have you found anything anywhere that suggests that, you know, I think the word collusion was used? Yes. I have yet to find a case where a lawyer was sanctioned for what I did, for assisting a colleague. With an SOJ as of right. Correct. Ms. Gibson, there was an in-camera inspection of several documents in this case, correct?  And in those documents, there was some correspondence between Mr. Birney, and I believe it was your office, indicating how he was going to proceed, or how he intended to proceed, either by SOJ, motion to dismiss, or a motion to stay, discovery, or some other way. There was something in that order. So the court saw this document in camera. So does it, do you believe that it goes to show that you were working together, as opposed to against each other, or that you weren't the one whose idea was the violence? No. I did not get involved, and I think the court's stated twice when giving its ruling, that there was no involvement. But there was no evidence that we participated until the reply. And that's when the participation started. Was Birney found in contempt? He was not found in contempt. Or sanctioned. And he wasn't. And I'm glad he wasn't. It was his independent judgment, and he stated that twice to bring the motion. And I think the motion, his motion had merit. But regardless of which attorney drafted the motion, whether it be, you know, or the reply, the motion to substitute was still the motion of not Mr. Birney, or not me, is the motion of the third party defendant. It's their right. May I ask, just to look at the thing as a whole, and look thoroughly and deeply, if I asked you to assume that similarly situated counsel had acted, or been found to act in ways different than our case here, and were the third party defendants brought in, if the original plaintiff, the person in your position, thought it was in their interest to stimulate a third party defendant to bring a SOJ as of right, is that bad, wrong, sanctionable, unethical, does it impede the administration of justice? I think that if it was, and so far the case at issue, because we didn't bring these defendants in. It wasn't our choice. We didn't want them in. No, I understand. We worked together to get them dismissed. But had that been the case, I think we're looking at an entirely different situation. It might have been sanctionable under Rule 137 for, you know, harassing, harassing pleadings. But that's not the case. I think it would have been bad and unethical if somebody had brought, you know, there were 43 different defendants represented by Mr. Bernie, kept using the substitutions to harass and delay, but when he did it, he brought them on behalf of, you know, all of the defendants and just exhausted his one as of right. So, but even absent the joint defense agreement, I know of no rule, regulation, or statute that prohibits me from helping out a friend and colleague with research ideas in writing. We do that all the time. That's what lawyers do. It's what we do. We bounce ideas off each other. We collaborate. But this time we had a joint defense agreement and an opponent in common. And again, even without it, I don't believe we violated any rules, regulations, statutes. By me assisting my colleague, it would apply. But considering we had the joint defense agreement and I was operating under that, believing we were cooperating, I believe that the sanctions were especially unjust and unfair. And I do believe that the sanctions violated our First Amendment rights and the way they were issued, the due process rights. Because they were sui sponte? Yes, and by total surprise, but, you know, substantively, I believe it was protected speech. And I understand attorneys' speech can be limited and prescribed in the courtroom. We can only speak at certain times when we're called on. We can't create an outburst. Sometimes we're ordered not to speak to the press. We can't solicit clients in the courtroom. We can't violate court rules or a court of ethics with our speech. But this wasn't a case. This was doing my job. I was researching, writing, argument. I was corresponding with a colleague. Correspondent said, quite frankly, I never thought we'd see the light of day. It was a private email. I was doing what lawyers are supposed to do. But again, those correspondents were, those were documents that were given to the judge in camera. Correct. For in-camera inspection. Because we were claiming the privilege. And, you know, the case law that I cited in my brief is a court should only restrict an attorney's speech when the speech poses a serious and imminent threat of interference with the fair administration of justice. And this was not that. This was not a violation of the court rules or rules of ethic. I did research and I helped write a reply to a proper motion to substitute that, ironically, the reply was only necessary because of the response, cited an overruled test the waters doctrine. And all Mr. Smaran did was to associate, was to be CC'd on the emails. He was guilty by association because he was CC'd on the emails of Mr. Burney asking for my help and me responding, offering me assistance. But Mr. Burney was not sanctioned. Correct. He was not. And nor do I think he should have been. I believe that the trial court retaliated against me and Mr. Smaran for my participation in the reply, which was protected speech. My reply brief certainly wasn't a threat or an interference to the fair or orderly administration of justice. It was protected. It didn't cause delay. And, you know, the main reason we're here is we're upset at the way that we were treated. To touch on due process really quick, I do believe that the sanctions violated our due process rights by failing to give us notice or hearing. We had no clue and were entirely surprised when the court imposed the sanctions. The court, if you look at the orders, the case was up for continued hearing on the motion to substitute. The word sanctions had never been used by the trial court before. Court didn't ask for briefs or legal argument on the issue of sanctions. We're not allowed to testify or present evidence. And I stood by silent through most of these proceedings because earlier in the hearing on the motion to substitute, the trial court judge had stated that he didn't want to hear from me again after calling on me. So I really didn't want to invoke the ire of the court. Too late. Well, I wasn't even present when the sanctions were imposed. And so I do think it's a clear violation of due process. That said, in closing, while I believe the due process violation is clear, I pray that the sanctions, because I don't want to do this again, it was very upsetting, are vacated for substantive reasons. I pray that they're reversed because they were unjust, not warranted because they violated our First Amendment rights. We shouldn't have been sanctioned because I helped my colleague draft a reply to the motion to substitute. It was entirely permissible. If anything, if they're going to stand against me, they should go away against Mr. Smaran, but I pray that they be vacated to me, too. And I thank you for your time. Any questions, Justice Sotomayor? No, thank you. Thank you, Ms. Gibson. Mr. Anderson. Thank you, Your Honors. Sure. You can adjust that microphone, however. May it please the Court, counsel. Your Honors, this appeal concerns the integrity of the state's court system and the power of trial courts to preserve that integrity when a litigant or its counsel has manipulated the rules and procedures of the court and the laws of the state of Illinois in order to achieve outcomes and relief that they cannot independently seek. How did counsel manipulate or abuse the court system? By participating in the drafting, crafting, strategizing of a motion that they had long since waived. As I asked Ms. Gibson and I'm going to ask you, Mr. Anderson, there was orders to do an in-camera inspection of certain documents in this case, correct? Correct. And several of the documents were from Mr. Birney to Ms. Gibson's firm, talking about how his strategy, how he was going to proceed. So how is it that they were, quote, unquote, driving the bus? Well, first thing, Your Honor, is I'm in a difficult position because I myself was never able to see those documents. They're not part of the record. The only people with knowledge of those documents are counsel and the trial court judge. So I don't believe the record completely and comprehensively reflects what is in those documents. Furthermore, those documents were a trickle of the information that was requested prior to these hearings through discovery that the plaintiff's counsel fought tooth and nail at every single step. But to answer your question, I think counsel's representations that her involvement, the plaintiff's counsel's office involvement, was limited solely to researching and drafting of replies strains credulity. Isn't that what we're here for, only about the motion for substitution? That's the only thing we're here for today, correct? Correct, but I think what counsel tries to limit, Your Honor's review of this record, is to suggest that she only researched and drafted a reply after Mr. Burney had independently determined on his own to bring this motion for substitution and after that motion had been filed. And I don't think that that's accurate. I don't think the record supports that. So even if she said, hey, did you ever think of filing a motion for substitution? They're kind of on the same page here. They have the same goals here, basically. How is that abusing or manipulating the system? Because I disagree that they have the same goals here. I think the Illinois Supreme Court's mandate in this case recognizes that the plaintiff and the individual law owners within the subdivision's interests are diametrically opposed. And so that's where I don't believe, and the trial court has subsequently ruled, that the joint defense privilege does not apply in this case. But even if they could do that, the joint defense agreement was not entered into until after the village had consulted with Mr. Burney independently. Then the village and Mr. Burney agreed to go solicit these third-party defendants as clients. And that's where I continue to go back to. Mr. Burney represented to the trial court on numerous occasions that he had never been before the Honorable Judge Wallet before. He had never practiced before him. He had no knowledge whatsoever. Who did was plaintiff's counsel, who had litigated for five years. So he did not find sanctioned Burney, though? No, and I think that, again, the reason I will continue to argue that the trial court could have and should have denied the motion for substitution of judge. On what basis? On the basis that in that sense. If Palos says we don't look at the motivation, he has to grant the motion. I think the Palos Community Hospital case demonstrates that the motion must be properly brought. And in this case, I believe that the motion could have been denied because it was not properly brought. Why wasn't it properly brought? Because it was at the motivation, instruction, direction, and strategizing of the plaintiff's counsel who had long since waived that right. They were judge shopping. They saw an opportunity to judge shop, and they took that opportunity by hiring Mr. Burney, paying Mr. Burney's fees, jointly agreeing to go solicit third-party defendants so that he could represent them so that he could file this motion that the village had long since waived. And so to go back to Your Honor's question as to why Mr. Burney wasn't sanctioned, the trial court did explain that Mr. Burney, on behalf of his clients, still maintained this right to substitute a judge as a matter of right. And so in that sense, he had not acted improperly. But plaintiff's counsel had acted improperly by participating, planning, strategizing to bring a motion based on a right that they had waived five years prior. And so, again, I think this goes to the officials. Again, that is something that lawyers do, strategize. I think in certain circumstances. And what is wrong with that? I think in certain circumstances, this being one, jointly strategizing with an adverse party to secure a right that you have waived is not strategizing in the sense of advocating on behalf of your client. It's the type of gamesmanship. It's the type of abuse and manipulation that the Supreme Court warned and the Supreme Court equipped trial courts with the power and authority to control their courtrooms. And this isn't just a matter of efficiency. And, in fact, I would argue that the trial court's decision in this case was, again, a conservative approach. What rule or rules did the village violate? The rule. Any discovery rule, rule of professional conduct. I can't agree with the court. The preamble to the rules. Again. Is there anything that you can point to? I would point to the Illinois rules of professional responsibility and specifically candor to the court. In what way weren't they fully forthcoming with the court? At multiple instances. Should they have stepped up and said, we like this motion, Judge, because you've ruled against us or whatever you think their motivation is? Was that the duty they owed? They weren't asked? There was multiple times, multiple times throughout these proceedings where specifically Mr. Smorin, who is present in court, Chris Gibson, who is present in court, should have corrected Mr. Bernier. But the trial court never raised that as a finding. The trial court did specifically state in issuing the sanctions that the basis for the sanctions was as a result of the need to ferret out the abuse and manipulation that had only been discovered well after the fact. It's a question of whether there was abuse or manipulation. But coming back to that, I mean, is there any case at all where the trial court exercises inherent authority in anything close to this? None, Your Honor. But I think that this situation is so unique that, again, it goes back to.  I mean, you know, I've had third-party, fourth-party, fifth-party defendants in a case. That comes up all the time. And so you have a crowd of lawyers there, and they may well be strategizing together on interests that are common to them. And who has the right to ferret these out? I mean, you raised in your brief the idea that when you moved for the correspondence, that they shouldn't have opposed that. It's not my experience that people roll over for turning over correspondence with lawyers. That generally is going to be a hot fight. That's been my experience. But you see this as something that has to be ferreted out. They were hiding it. I don't think the trial court found that. That wasn't the basis for the trial court's ruling. But let me ask you the same question that I asked counsel, which is, let's assume a different case, and a third-party defendant is brought in by, I think it was your client. So let's just say interests totally opposed. Plaintiff, defendant. Defendant sues the third party. The plaintiff sees they have interests that aligns. Or maybe they don't. You pretend they don't. What's wrong with going to them and saying, this judge has ruled against us. Why don't you take a substitution? You can't. Let's assume that happened. What's wrong with that? Where's the ethical rule? Where is the impunity to the trial court's authority? In what way does that interfere with the administration of justice? Obtaining the rights that have long since been waived. Securing the rights. What's wrong with that? I believe it's an abuse of manipulation of the rules that bind us. There's no case on that? There's nothing close? None that I know of. You haven't filed anything? But again, I want to go back to the candor to the court issue. Because I do believe that this was a basis for the court's ruling. And this goes to the fairing it out. At the very first hearing on this matter, where Mr. Birney assumed it was going to be a perfunctory hearing. I brought a motion to substitute as a right. But again, there was immediate questions on the defendant's behalf of whose decision was this. And at repeated times. Which you raised. Yes. May I also ask a question? You raised candor to the court. Why did you cite test the waters doctrine in your response? It was an inarticulate mistake that I corrected. Did you advise the trial court that Supreme Court had ruled? No, I was unaware of the Payless Heights Community case. Which I acknowledged in court. In the council? Yes. Which I acknowledged in court. And again, the inarticulate citing to a rule. But the spirit and the nature of the response is the same that was argued subsequently. And is the same that's being argued to your honors today. May I ask another question? Is there anything in the record that speaks to the current status of the third party defendant? Anything in your record? No, I don't believe in this record. The third party defendants were dismissed with prejudice from the case. The original landowners, the roots who were named as third party defendants, have a pending third party complaint against them. So some are still remaining active in the case. Do you think that the court could have imposed a lesser sanction? To achieve what they said was an abuse or manipulation of the system? I think this is where the court took to heart the Payless Heights opinion, or Payless Community Heights opinion, where recognizing its inherent powers to govern and to control made a difficult and, I contend, a conservative decision to stop this procedure from grinding the underlying litigation to a halt. By imposing a sanction but granting the motion to substitute, which again, making that decision, prevented the underlying litigation from grinding to a halt with more litigation concerning this isolated issue. And if the trial court had denied the motion, there would remain the possibility that this honorable court would later overrule that decision, requiring the litigation to start from scratch after protracted litigation and possibly a potential lengthy trial. The Plankett's counsel and attorney, Bernie, knew this and made sure that the trial court did as well while advocating the third party's motion to substitute. And again, I do, before my time is up, want to go back to the candor to the court situation because, again, Mr. Bernie came out at the outset in arguing this motion and said there is no coordination, there is no collusion, there is no efforts between me and the village. So then why wasn't he sanctioned? Why did they sanction her and why didn't he sanction Bernie? I believe that the motion should have been denied. I believe that all three of them should have been sanctioned. But the trial court made the conservative decision to grant the motion to substitute. And as far as not sanctioning Bernie, the trial court's reasoning was that because attorney Bernie's clients at that time still maintained the right and he had a lawful basis to bring this motion, whereas the village's counsel did not have a lawful right to bring this motion and abused and manipulated the system by undermining the rights that they had long since waived by seeking it thereafter. No, they could have filed 43 motions for SOJ, right? Arguably, yes. Yeah, that would have been an abuse. They would have been allowed to do it, but that would have been more of an abuse than just filing one motion for substitution, wouldn't it? Yeah, they had to have done that, yes. But again, I think the abuse and the manipulation here is that the village encouraged, strategized, planned this motion to substitute based on the information that the trial court had in front of them. So you think if they hadn't suggested it, that Bernie would have never filed an SOJ? I believe the trial court was in a position to make that determination. Mr. Bernie, representative of the court, had never practiced before the Honorable Judge Waller. But the court didn't make that determination. I'm sorry? The court didn't make that finding. No, my understanding. So, in this case, the trial court's order should only be reversed if it can be said to be an abuse of discretion, and that is that no reasonable person would agree with the trial court's decision to impose the sanctions it did. Given what the trial court found, and how it was forced to find that by the plaintiff's action, and frankly, silence at times to make those findings, no reasonable person would disagree with the trial court's decision to impose sanctions under these circumstances, especially given the implications on the integrity of the court system. And what about counsel's argument that they were denied due process and not given an opportunity to respond to the allegation? This is where the counsel's representations are not accurate, that the motion was only set for ruling on the motion to substitute. The trial court made perfectly clear weeks in advance that it was considering issues concerning the abuse and manipulation of the system in relation to this motion. So, at that point in time, counsel was put on notice that its abuse, its manipulation of the court system in relation to this, was being considered by the court and was at issue. And, again, at every opportunity to explain to the court, to represent to the court, they stood silent. And so... Well, they didn't have anything in writing in terms of an accusation against them. They were just bamboozled by the court. And I know Judge Waller is a good judge. He prepares. But this came out of the blue. Just because he's thinking about it doesn't mean there's going to be an allegation that you're going to have to respond to. Well, Your Honor, I would think that if this Honorable Court does anything other than affirm the order, the only reasonable alternative would be to remand the issue back to the Honorable Judge Waller for further proceedings, including requiring the plaintiff and his counsel to comply with the defendant's outstanding discovery request so that all the information related to this motion, all the information related to the village's efforts to induce this motion, can be, as the trial court stated, ferreted out. I believe that the trial court did not do that simply because, again, to get mired in this isolated issue had already delayed the underlying proceedings enough. But, again, I believe there was adequate due process. I believe that the court may impose sanctions in the manner in which it did. But, again, the only reasonable alternative other than sustaining and affirming the trial court's order, which I implore this court to do, would be to remand back before the Honorable Judge Waller for further evidentiary proceedings on this specific issue. Thank you, Your Honors. Ms. Gibson, you have a right to rebuttal here. To be brief, I just want to touch upon a couple of points. I do believe the record is complete enough. Although the in-camera records are not in this court's record, you can't really admit these in-camera records without waiving all the attorney-client privilege. And besides that, I think the judge read through the relevant portions of the in-camera records. I want to acknowledge that the joint defense agreement was subject to a later ruling, a discovery ruling. We had withheld some discovery claiming communications were privileged under the joint defense agreement, and the court overruled our objection. This may be subject to another appeal. We might not have to appeal this case again. But I just wanted to inform the court of that adverse ruling against our joint defense agreement. Would you agree that it's not uncommon for plaintiffs in a case to work with originally named defendants? It happens in personal injury cases, construction cases, contract cases, where one of the defendants, one or more defendants, might be willing to be aligned with the plaintiff? No, it's not uncommon. I have a case pending right now in a different court where I'm a third-party defendant, and we are working together with the plaintiff. So it's not uncommon. Our attorney, Bernie, stated in open court twice that he didn't collude with us in bringing the motion. Obviously, I helped thereafter with the reply. The court found twice that the only evidence was that we participated in the reply. And I do think that's plausible, putting myself in Attorney Bernie's position. If I'm reviewing the record and I see that I'm brought into a case where a judge has made adverse rulings against maybe the positions of where I want to go with the case, I might have considered it just as Attorney Bernie did. The due process, it was a total surprise, the sanctions. I wasn't even there, and had I had any inkling, of course I would have been there in court. The word sanctions wasn't used. We weren't allowed to put on evidence. But again, I pray that this does not get sent back. I don't want to go back to Judge Waller and do this again because this was very upsetting. I do pray that these sanctions are reversed substantively. Mr. Bernie's motivation, I think that HALOS renders Mr. Bernie's motivation in bringing the motion to substitute irrelevant. That's the whole reason the test of the water doctrine was overruled, because the attorney's motivation is supposed to be irrelevant. Now, we can't use the motion to substitute for an improper purpose, such as delay or to harass. But again, that wasn't the case here. When the motion for substitution was handed to the judge, was there an objection? Yes. There was an objection, and I believe Mr. Anderson asked for an opportunity to reply, which he was granted. I just pray against the precedent that would sanction attorneys for assisting in research and writing for a colleague, and especially a colleague in a case where people were working together under color of a joint defense agreement. And I thank you for your time. Any questions, Justice Miller, Justice Orr? Okay. Folks, thank you very much for your arguments here today. We appreciate your time. We will take this case under consideration, issue a decision in due course. Court is adjourned. Recess until our next case.